UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| RENE CHALCO, | : | |
|---|---|---|
| | : | Case No. 3:15-cv-340 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | June 1, 2017 |
| CHRISTOPHER BELAIR, ROBERT MADORE, RYAN HOWLEY, and ANDREW KATKOCIN | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION DENYING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [DKT. NOS. 63, 65]**

I. **Introduction**

Plaintiff Rene Chalco brings this action against City of Danbury police officers Christopher Belair, Robert Madore, Ryan Howley, and Andrew Katkocin (collectively, "Defendants"). Chalco alleges, *inter alia*, that Belair used excessive force under color of law during a traffic stop, and that all of the Defendants were deliberately indifferent to his medical needs, in violation of the United States Constitution. [*See* Dkt. No. 24]. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. [Dkt. Nos. 63, 65]. For the reasons that follow, the Defendants' Motions for Summary Judgment are DENIED.

II. **Background**

    A. **The Record on Summary Judgment**

"A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or

1

declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). A party may also support their assertion by "showing that the materials cited do not establish the absence . . . of a genuine dispute." *Id.* Cited documents must consist of either "(1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." Local R. Civ. P. 56(a)3; *see also* Fed. R. Civ. P. 56(c)(4).

The Court need not consider any materials that the parties have failed to cite in their Rule 56(a) Statements of Fact, but may in its discretion consider other materials in the record. Fed. R. Civ. P. 56(c)(3). If a party fails to properly support an assertion of fact, or fails to properly address another party's assertion of fact, the Court may "consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e); *see also* Local R. 56(a)3 ("[F]ailure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming certain facts that are supported by the evidence admitted in accordance with [Local] Rule 56(a)1 or in the Court imposing sanctions, including . . . an order granting the motion if the undisputed facts show that the movant is entitled to judgment as a matter of law."). Because Plaintiff did not file a Rule 56(a) statement until after the deadline to do so had elapsed [*See* Dkt. Nos. 71, 78], the Court is not obligated to consider any of the facts Plaintiff asserts in his Rule 56(a) statement. However, the Court has nevertheless considered facts asserted

2

in Plaintiff's Opposition where they are supported by timely-filed evidence elsewhere in the record.

### A. Factual Background

On the evening of March 7, 2013 at approximately 11:00 p.m., Chalco drove to a Danbury bar, where he consumed three beers and three cocktails over the course of two hours. [Chalco Dep. at 21-22, 25]. Chalco left the bar at around 1:00 a.m. and proceeded to drive home. *Id.* at 27. At the time, Chalco did not have a driver's license, and had never been licensed to drive. *Id.* at 23. On his way home, he approached a stop sign, applied his brakes, but began to skid on the icy street and proceeded through the stop sign without stopping. *Id.* at 30. Officer Madore then initiated a motor vehicle stop. [Dkt. 63-5 ("Madore Aff.") ¶ 6].

Immediately prior to the stop, Officer Madore was operating his police cruiser alone, and was being followed in a second cruiser by Officers Katkocin and Howley. [Madore Aff. ¶ 5]. When Madore stopped Chalco, Katkocin pulled in behind Madore's cruiser. [Dkt. 63-6 ("Katkocin Aff.") ¶ 6]. Officer Belair, who was nearby, heard on the radio that Madore was conducting a traffic stop, and arrived at the scene shortly thereafter. [Dkt. 65-4 ("Belair Aff.") ¶¶ 5-6]. Belair approached Chalco and Madore while they were speaking outside of Chalco's car. *Id.* ¶ 8. Belair remained with Chalco while Madore returned to his police cruiser to write Chalco a ticket for failing to obey a stop sign and for driving without a license. [Madore Aff. ¶¶ 7-8; Belair Aff. ¶ 9].

The parties have submitted audio and video recordings of the stop. Officer Howley made an iPhone audio-recording of the incident, which was synced to a

3

cruiser dashboard camera ("ICOP") video during an internal affairs investigation. In the recording, Belair states:

> "You got here somehow. Then walk back home. Take a fucking bus. Take that car once you get it out. I don't care. But stop being in this country and almost fucking killing people because you're too fucking stupid to call a ride. Honestly if there wasn't four other cops here . . . if there wasn't four other cops I'd beat the shit out of you right now . . . . It's an asshole like you that killed my uncle because he was fucking drunk driving, right? Some douchebag like you that decided to drink too much and go out in the middle of a fucking snowstorm when you shouldn't even have been driving anyway. But that's alright. You don't even give a shit about other people's families do you? . . . . You're a piece of shit."

[Dkt. 75, Exh. 2 ("ICOP Video")]. An officer then stands in front of Chalco, blocking him from the camera's view, and Belair states, "Now you want to cry? Now you want to cry?" *Id.* Chalco then appears to hold his hand to his face. *Id.* During this exchange, Chalco repeatedly apologizes to Belair. *Id.*

Chalco maintains that Belair punched him in the mouth, which caused extreme pain and bleeding to his mouth and lips. [Chalco Dep. at 50, 52, 57]. Chalco testified that he swallowed the blood while he was speaking with the officers, but once he began walking home, he could no longer do so and blood dripped out of his mouth onto his coat. *Id.* at 59. Photographs of Mr. Chalco's coat show stains that are visually consistent with dripping blood. [Dkt. 75, Exh. 4]. However, forensic testing of these stains did not detect blood. [Dkt. 65-7 ("Marcus Tr.") at 151-54]. While the Defendants submitted affidavits swearing that they did not observe Belair punching Chalco and that they noticed no injury to Chalco's lip, Chalco's brother, two co-workers, and an acquaintance testified that they observed Chalco's swollen lip in March 2013. [Dkt. 75-5 ("J. Chalco Tr.") at 63, 66; Dkt. 75-6 ("Gallagher Tr.") at 96, 98, 100; Dkt. 75-7 ("Rizkallah Tr.") at 75-

4

76, 78; Dkt. 75-8 ("Guillcatanda Tr.") at 55, 56, 59]. The Defendants do not claim that Chalco was uncooperative or combative during the stop. [*See* Dkt. 63-2; Dkt. 65-2].

As a result of Belair's alleged assault, Chalco claims that he was unable to play a wind instrument recreationally for two months, he still has a scar, and that he now suffers from anxiety and post-traumatic stress. [Guillcatanda Tr. at 55, 56, 59; Dkt. 75-11]. However, Chalco did not seek medical care immediately following the incident, and self-treated his cut lip the following morning by rinsing it with salt water. [Chalco Dep. at 62-64]. Chalco also testified that he did not immediately seek medical attention because at the time he thought, "[I]t's not a big injury." *Id.* at 63-64.

Following the incident, a complaint was made to internal affairs, and the resulting investigation determined that Officers Madore, Katkocin, and Belair violated ICOP policy by failing to activate, or disabling before the traffic stop ended, video and audio recording systems in their vehicles. [Dkt. 75-17 at 10-11, 13-14]. It also determined that Madore and Belair violated a duty of care by instructing Chalco to "walk home a distance of approximately one mile at approximately 0130 hrs during an intense snow storm" and after Chalco had "already been seen stumbling in the roadway." *Id.* at 9-10, 13. The investigation also determined that Katkocin and Howley violated department policy by failing to intervene or report the incident to a supervisor when they observed Belair yelling at Chalco. *Id.* at 11. Katkocin and Howley also both reportedly told internal affairs that they saw, or knew that Chalco was allowed to, walk away from the

5

scene. *Id.* at 11, 13. Finally, the investigation concluded that "Belair used unnecessary force and was not truthful during the investigation and withheld pertinent information from the investigator including, but not limited to the admission that he assaulted the operator." *Id.* at 14.

Belair was also criminally prosecuted in connection with the incident. [*See, e.g.*, Dkt. Nos. 75-3, 75-5, 75-6, 75-7, 75-8]. However, while they submitted trial transcripts from the criminal proceeding, the parties did not submit evidence regarding the charges or the outcome of this prosecution, and such records do not appear to be publicly available.[1]

### III. Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). In order to prevail, the moving party must sustain the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*,

---

[1] Pursuant to Conn. Gen. Stat. § 54-142a, when a criminal defendant is found not guilty by final judgment, all police and court records pertaining to the case are erased after the time limit for filing an appeal has elapsed (20 days).

6

477 U.S. 242, 250 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006) (quotation omitted). In addition, "the court should not weigh evidence or assess the credibility of witnesses" on a motion for summary judgment, as "these determinations are within the sole province of the jury." *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment 'cannot defeat the motion by relying on the allegations in [her] pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.' At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch-Rubin v. Sandals Corp.*, No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir. 1996)). "Summary judgment cannot be defeated by the presentation . . . of but a 'scintilla of evidence' supporting [a] claim." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 726 (2d Cir. 2010) (quoting *Anderson*, 477 U.S. at 251).

IV. <u>Discussion</u>

Defendants argue that no genuine issue of fact exists that would preclude summary judgment on Plaintiff's claims under 42 U.S.C. § 1983, and for assault

7

and battery and intentional infliction of emotional distress. The Court will address each of these claims in turn.

### A. Constitutional Claims

Section 1983 provides that "any person who, acting under color of law, 'subjects or causes to be subjected, any Citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws' of the United States shall be liable to the injured party in actions at law." *Shattuck v. Stratford*, 233 F. Supp. 2d 301, 306 (D. Conn. 2002) (quoting 42 U.S.C. § 1983). Plaintiff has alleged violations of his constitutional rights under two theories: (1) Belair violated Plaintiff's rights under the Fourth Amendment by using excessive force during his traffic stop; and (2) all four Defendants violated the Plaintiff's Fourteenth Amendment rights by demonstrating deliberate indifference to the Plaintiff's medical need.

#### 1. Excessive Force

Claims that law enforcement officers have used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006). "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is reasonable under the Fourth

Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* Accordingly, a court must examine "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quotations and citations omitted).

The reasonableness of a particular use of force must be judged objectively under the totality of the circumstances and "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*; *see also Jones*, 465 F.3d at 61 ("We are, of course, mindful that the reasonableness inquiry does not allow us to substitute our own viewpoint; we must judge the officer's actions from the perspective of a reasonable officer on the scene."). Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Id.* at 396 (quotations and citations omitted).

Here, no evidence suggests that the use of force during Chalco's traffic stop would have been reasonable. It is undisputed that Chalco followed the Defendants' instructions without any resistance, and indeed, Belair does not

9

argue that striking Chalco was justified. Rather Belair denies using *any* force on Chalco, and argues that the ICOP video "so utterly discredits [the] Plaintiff's version of events that no reasonable jury could have believed him," *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, the video evidence in this case is not as strong as the Defendants would have the Court believe. Throughout the video, relevant events are either partially or fully obscured by flashing lights, officers' bodies, and a police cruiser. [ICOP Video]. The camera is also positioned a full car length away from Chalco and Belair during their encounter, and the image quality is poor. *Id.*

Moreover, the internal affairs investigation into the incident concluded that the video was consistent with Belair physically assaulting Chalco. [Dkt. 72-17 at 14 ("[W]hen the video is viewed[,] you can see two unprovoked assaults and a third action that is not as clearly visual as the first two assaults, but it is clear that the third action occurred based on the body actions of the operator covering his hands and face then then P.O. Belair asking the man 'now you want to cry' or 'now you are going to cry.'"). While the Court certainly is not bound by the investigator's opinions, they suggest that a reasonable jury could determine that the video depicts a physical assault. Considering the evidence in the light most favorable to the Plaintiff, therefore, summary judgment on the Plaintiff's excessive force claim must be DENIED.

### 2. Deliberate Indifference

Defendants argue that Chalco cannot state a claim for deliberate indifference to a serious medical condition because he was not a "pretrial

detainee." "A pretrial detainee's claims are evaluated under the Due Process Clause because, '[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.'" *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)). The Defendant is correct that the Plaintiff was not detained, but the Court's inquiry does not end there.

A claim for deliberate indifference to medical need can be brought pursuant to the Due Process Clause's substantive protections. The Fourteenth Amendment is not a 'font of tort law' . . . [and it] does not provide a comprehensive scheme for determining the propriety of official conduct or render all official misconduct actionable." *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998)). "'[N]egligently inflicted harm is categorically beneath the threshold of constitutional due process.'" *Id.* (quoting *Lewis*, 523 U.S. at 849). Nevertheless, "a state created danger can be the basis of a substantive due process violation." *Pena*, 432 F.3d at 108. "[M]ost decisions allowing claims under the state-created danger exception deal with actions taken (or not taken) by police during the execution of their law enforcement duties." *Hespeler v. Town of Ledyard*, No. 307-CV-801 CFD, 2009 WL 3128536, at *3 (D. Conn. Sept. 28, 2009).

Even in a non-custodial setting, a state actor may be culpable for acting with deliberate indifference where they "'have an opportunity to reflect and make reasoned and rational decisions,'" and where a particular duty "does not ordinarily clash with other equally important governmental responsibilities."

11

*Pena*, 432 F.3d at 114 (quoting *Rivera v. Rhode Island,* 402 F.3d 27, 36 (1st Cir. 2005)). While Chalco was not a pretrial detainee, "the case before us does not involve a chase of a suspect or a prison riot where we must 'capture the importance of [state officials'] competing obligations, or convey the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance.'" *Pena*, 432 F.3d at 113-14 (quoting *Lewis,* 523 U.S. at 852). The Defendants made a deliberate choice to have Chalco's car towed and to leave him alone on the side of the road in the middle of the night, during a snowstorm.

The Second Circuit has not considered a directly analogous case. However, in *Wood v. Ostrander*, 879 F.2d 583, 589 (9th Cir. 1989), the court held that a due process claim could survive summary judgment where the police arrested the plaintiff's companion for drunk driving, impounded the companion's car, and left the plaintiff on the side of the road five miles from home, in a high crime area, and not dressed warmly enough for the weather. Similarly, the Third Circuit found a due process claim could survive summary judgment where police officers stopped the plaintiffs' highly inebriated daughter within a block of her home, told the daughter's husband that he could go home, left the daughter alone on the side of the road, and she was later found suffering from severe hypothermia and brain damage. *Kneipp v. Tedder*, 95 F.3d 1199, 1203 (3d Cir. 1996).

The Court agrees with the Defendants that undisputed evidence shows that Chalco concealed the injury to his mouth from the Defendants during the incident

and believed he did not suffer a serious injury. However, as the Internal Affairs Investigation notes, the officers violated department policy by leaving Chalco on the side of the road to walk home during a severe snowstorm in such an inebriated state that he was unable to walk steadily. A reasonable jury could determine that by leaving Chalco alone following the stop, the Defendants were deliberately indifferent to a substantial risk of serious harm to Chalco's health and that their indifference to his wellbeing was shocking to the conscience. Defendants' Motions for Summary Judgment are therefore DENIED with respect to the Plaintiff's deliberate indifference claim. The Court notes, however, that the Plaintiff has offered no evidence in support of a claim that he suffered any actual injury as a result of Defendants' deliberate indifference. A reasonable jury, therefore, cannot find that Chalco is entitled to any damages other than nominal damages.

### B. Assault and Battery

"To establish a claim for assault and battery, plaintiff must prove that defendants applied force or violence to [him] and that the application of force or violence was unlawful." *Odom v. Matteo*, 772 F. Supp. 2d 377, 395 (D. Conn. 2011) (quoting *Williams v. Lopes*, 64 F. Supp. 2d 37, 47 (D. Conn. 1999)). Where genuine issues of fact preclude summary judgment on the Plaintiff's excessive force claim, summary judgment on the common law claim for assault and battery generally must also be denied. *See, e.g., Nelson v. City of Stamford*, No. 3:09-CV-1690 VLB, 2012 WL 233994, at *9 (D. Conn. Jan. 25, 2012) (denying summary judgment where "material factual disputes remain regarding the amount and

13

reasonability of force applied to [the plaintiff] during her arrest"); *Odom*, 772 F. Supp. 2d at 395 (denying summary judgment on assault and battery claims where "there are genuine issues of material fact regarding the reasonableness of [the defendant's] use of force"). As with the excessive force claim, Belair argues that he is not liable for assault and battery because video of the traffic stop shows that he did not strike Chalco. For the reasons discussed in Section IV.A.1., *supra*, Belair's Motion for Summary Judgment must be DENIED with respect to the assault and battery claim.

### C. Intentional Infliction of Emotional Distress

To prevail on an intentional infliction of emotional distress claim, the Plaintiff must demonstrate: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Appleton v. Bd. of Educ. of Town of Stonington*, 254 Conn. 205, 210 (2000) (quotations and citations omitted). "Liability for intentional infliction of emotional distress requires conduct that exceeds 'all bounds usually tolerated by decent society . . . .'" *Id.* (quoting *Petyan v. Ellis*, 200 Conn. 243, 254 (1986)). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, [']Outrageous!'" *Morrissey v. Yale Univ.*, 268 Conn. 426, 428 (2004) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003)). "[T]here is no bright line

rule to determine what constitutes extreme and outrageous conduct sufficient to maintain [an intentional infliction of emotional distress] action." *Green-Cubano v. Norwalk Acquisition I, LLC*, No. FSTCV146023777S, 2015 WL 4380273, at *4 (Conn. Super. Ct. June 23, 2015).

Belair argues that his statements to Chalco were "merely insulting or display[ed] bad manners," and are therefore insufficiently outrageous to satisfy the requirements of an intentional infliction of emotional distress claim. [Dkt. 65-1 at 21]. The Court notes that Belair's statements consisted not only of "[a] raised voice, use of profanity and chastising," *id.* at 22, but threatened physical violence and disparaged Chalco based on his national origin. Specifically, Belair stated, "[S]top being in this country and almost fucking killing people because you're too fucking stupid to call a ride. Honestly if there wasn't four other cops here . . . if there wasn't four other cops I'd beat the shit out of you right now." [ICOP Video]. "'[C]ourts have been more apt to find sufficient allegations of outrageous conduct when that conduct involves violence, the threat of violence, or racial, ethnic, or religious slurs.'" *Green-Cubano*, 2015 WL 4380273, at *4 (quoting *Cortazar v. Staples the Office Superstore*, No. FSTCV126013930S, 2012 WL 6846390, at *5 (Conn. Super. Ct. Dec. 12, 2012)).

Some cases have held that the use of discriminatory language can be insufficiently extreme and outrageous to give rise to an intentional infliction of emotional distress claim. *See, e.g.*, *Brown v. Mulcahy*, No. CV065001276S, 2007 WL 2363303, at *1 (Conn. Super. Ct. July 24, 2007) (finding that claim for intentional infliction of emotional distress failed where retail security guard

15

detained, directed racial slurs at, and spit on customer).  However, such language "has widely been viewed as 'beyond the bounds of decency, atrocious and utterly intolerable in a civilized community.'"  *State v. Local 387 of Council 4 AFSCME AFL-CIO*, No. CV 980579805, 1999 WL 124328, at *8 (Conn. Super. Ct. Feb. 19, 1999) (quoting *Ledsinger v. Burmeister*, 114 Mich. App. 12, 318 N.W.2d 558, 562 (1982)) (discussing telephone calls to legislators in which a party used the "f-word" and "n-word").

Belair's words must also be considered in context.  *See Green-Cubano*, 2015 WL 4380273, at *4 ("The court looks to the specific facts and circumstances of each case in making its decisions.").  The evidence suggests that Belair lost control and berated the Plaintiff because of a personal animus toward immigrants, while the Plaintiff was alone at night on a deserted street, surrounded by armed police officers who did not intervene.  Courts have previously held that non-privileged threats made by police officers against lone suspects can give rise to claims for intentional infliction of emotional distress.  *See Rutledge v. Krynski*, No. CV166032664S, 2016 WL 7142794, at *6 (Conn. Super. Ct. Nov. 1, 2016) (holding that plaintiff stated a claim for emotional distress by alleging that "defendant pointed and/or displayed his Taser gun and threatened . . . arrest when the plaintiff was stopped on the side of the road with a flat tire, waiting for roadside assistance to arrive"); *Martinez v. City of Hartford*, No. CV 98583310, 1999 WL 370684, at *1 (Conn. Super. Ct. May 5, 1999) (upholding a claim for intentional infliction of emotional distress where police officers maliciously threatened the plaintiff while effectuating a court order).  Indeed, the

16

internal affairs investigator described Belair's conduct during the incident as "shocking to the consci[ence]." [Dkt. 72-17 at 14].

However, because the Court has determined that a reasonable jury could find that Belair struck Chalco, the relevant question is whether Belair's statements and his alleged violent actions under the circumstances then and there prevailing *together* were extreme and outrageous. Where "material issues of fact exist regarding [a] plaintiff's claim of excessive force, summary judgment is improper as to [a] plaintiff's claim of intentional infliction of emotional distress." *Clark v. Dowty*, No. 3:05-CV-1345 WWE, 2007 WL 2022045, at *14 (D. Conn. July 9, 2007). Belair's Motion for Summary Judgment must therefore be DENIED as to Chalco's claim for intentional infliction of emotional distress.

V. Conclusion

For the foregoing reasons, the Court DENIES Defendants' Motions for Summary Judgment [Dkt. Nos. 63, 65].

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: June 1, 2017

17